UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

**NDSL, Inc.**, a North Carolina corporation,

Plaintiff,

v.

Case No. 1:12-cv-01161
Hon.

**Jason Patnoude**, an individual,

Defendant.

---

## DECLARATION OF EARL PHILMON

I, Earl Philmon, being duly sworn declare as follows:

1. I am the Chief Executive Officer of NDSL, Inc. ("NDSL"). In that capacity, I have personal knowledge regarding the facts and other matters set forth in this declaration.

2. Battery monitoring systems, although a part of the Uninterruptible Power Supply ("UPS") systems, is an important and integral part of the system. The sale of battery monitoring systems gives the seller unique insight into a wider range of products that can be sold to the end-users because of information that is gleaned from the customer system during the monitoring process.

3. Allowing Intellibatt to take advantage of Defendant's knowledge of the customers of the battery monitory systems can damage NDSL on two different fronts. First, it allows Intellibatt to obtain detailed information regarding NDSL's business models and customer requirements to allow Intellibatt to unfairly compete to obtain NDSL's battery monitoring business. Second, once Intellibatt sells a battery monitoring system to an end-user customer, it allows Intellibatt to obtain the necessary knowledge to sell ancillary services in connection with the UPS systems, such as batteries or cabinets. These actions impact the sales of NDSL's

distributors who also sell these other systems and, as a result, damage NDSL's relationships with its distributors.

4. While Defendant maintains that the battery monitoring business is only a small percentage of Intellibatt's revenues, its battery monitoring services are likely much higher margin items for Intellibatt than selling batteries. As a result, the percentage of revenues may not necessarily translate to percentage of profits.

5. Upon hiring with NDSL, Defendant went through an extensive training program with NDSL. Defendant's first full week of employment involved, in essence, a "bootcamp" where Defendant had extensive training regarding, among other things, how battery monitoring systems operate, technical support principles, product training, and quality issues, as well as sales and marketing strategies for battery monitoring systems. In addition, for the next few weeks, Defendant went on numerous sales calls with other representatives to learn more about the selling and marketing of battery monitoring systems.

6. While it is true that Defendant provided some technical training and supported the distributors that sold NDSL's product, those duties was only a small percentage of his job responsibilities. Defendant was responsible for the reseller's in his region. He also was also involved in sales presentations for other regions, attended trade shows, assisted in the development of new NDSL specification, among other things.

7. Attached as Exhibit 1 to this Declaration are samples of Defendant's expense reports demonstrating that he visited the end-user customers and attended trade shows where he met with and engaged in sales efforts with the end-users.

8. Defendant was well aware of the end-users of NDSL's battery monitoring product. Defendant met with direct end-users of NDSL's products.

9. Defendant also received updates and copies of the quotes from the channel partners that contained information regarding its sales. Defendant, in turn, would use that information to prepare "Pipeline Reports," listing the identity of the customers, the nature of the sale, and the value of the sale. Attached as Exhibit 2 to this declaration is an example Defendant's most recent Pipeline Report prepared before his voluntary termination. Not only did Defendant prepare such reports for his region, he was also provided with Pipeline Reports from the other regional sales representatives. Other regional managers also shared their customer targets and sales with each other, including Defendant.

10. Defendant also had access to NDSL's sales portal, which is password protected. Defendant could review any new quotes being submitted by the distributors/resellers. Each of the deals had the distributors/reseller's details on their sales opportunities and had all the information provided by the distributor/reseller.

11. Attached as Exhibit 3 to this declaration is an example of a direct correspondence sent by Defendant to one of Eaton's distributors following Defendant's voluntary termination.

12. NDSL has shipped product to virtually all of the 50 states. Attached as Exhibit 4 to this declaration is a map of the United States illustrating the recent shipments across the country.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 21st Day of November 2012.

Earl Philmon

2359837.1